RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0419P (6th Cir.)
File Name: 02a0419p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LARRY D. SMITH,
    *Petitioner-Appellant,*

    *v.*

GERALD HOFBAUER,
    *Respondent-Appellee.*

No. 01-1169

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 98-00890—Douglas W. Hillman, District Judge.

Argued: May 1, 2002

Decided and Filed: December 10, 2002

Before: SILER and CLAY, Circuit Judges;
OBERDORFER, District Judge.[*]

---

**COUNSEL**

**ARGUED:** F. Martin Tieber, STATE APPELLATE
DEFENDER OFFICE, Lansing, Michigan, for Appellant.
Janet A. Van Cleve, OFFICE OF THE ATTORNEY

---

[*]The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

1

GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee. **ON BRIEF:** F. Martin Tieber, STATE APPELLATE DEFENDER OFFICE, Lansing, Michigan, for Appellant. Janet A. Van Cleve, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee.

CLAY, J., delivered the opinion of the court, in which SILER, J., joined. OBERDORFER, D. J. (pp. 17-34), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

CLAY, Circuit Judge. Petitioner, Larry Donnell Smith, appeals from the district court's order denying Petitioner's application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. On appeal, Petitioner argues that because of his trial counsel's conflict of interest, a structural defect in Petitioner's trial occurred such that Petitioner was denied his Sixth Amendment right to the effective assistance of counsel under the auspices of *Cuyler v. Sullivan*, 446 U.S. 335 (1980).

Petitioner's claim seeks to extend *Sullivan's* lessened standard of proof necessary for a defendant to succeed on a claim for ineffective assistance counsel based on a conflict of interest involving joint representation to other types of attorney conflicts of interest. Because the rule sought to be invoked by Petitioner in order to succeed on his claim is a new rule that was not in effect at the time of conviction and, indeed, is still not in effect under Supreme Court precedent at this time, Petitioner's claim fails inasmuch as it is not based upon "clearly established federal law" for purposes of satisfying § 2254 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254(d)(1). We therefore **AFFIRM** the district court's denial of Petitioner's application for the writ, albeit for reasons other than those of the district court.

Supreme Court then denied Smith leave to appeal that ruling. The state, in its submissions to both the Michigan Court of Appeals and the Michigan Supreme Court, erroneously stated that Smith had never requested a hearing. This may help to explain the Michigan Supreme Court's apparent unawareness that Smith had, in fact, timely requested a hearing. In its decision affirming Smith's conviction and sentence, that court stated, "If a convicted defendant believes that his attorney's representation was below an objective standard of reasonableness, the appropriate procedure is to seek a *Ginther* hearing." *People v. Smith*, 581 N.W.2d 654, 658 (Mich. 1998) (citing *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973)). Thus, the Michigan Supreme Court advised Smith to seek exactly the relief that he had already diligently, but unsuccessfully, sought.

Smith's diligence at the state level to obtain a hearing was mirrored by his nearly equivalent diligence seeking the same relief in these federal habeas proceedings. Smith first requested a hearing in his objections to the magistrate judge's report and recommendation. The district court considered the merits of that request, thereby properly placing it before us in this appeal. The district court then denied Smith's request for a hearing on the ground that his ineffective assistance claim could be evaluated on the basis of the record and thus "a separate evidentiary hearing" was unnecessary.

In my view, no such "Catch-22" series of state and federal court complications should stand in the way of federal court review of Smith's predicament. I would remand this case to the district court to conduct an evidentiary hearing and to reconsider its denial of the writ in light of the results of that hearing.

## BACKGROUND

Petitioner, a body builder who was thirty-one years old at the time, was arrested in late January of 1991, following an allegation that he performed fellatio on a sixteen-year-old boy by force. Petitioner was charged with first-degree criminal sexual conduct in violation of Mich. Comp. Laws Ann. § 450.502b(1)(e) in Kent County Circuit Court, Kent County, Michigan, and with being a fourth felony offender in violation of Mich. Comp. Laws Ann. § 769.12. Shortly thereafter, Petitioner fired his court-appointed counsel and retained attorney Jeffrey Balgooyen. On April 26, 1991, Petitioner was arraigned as a fourth felony offender on the first-degree criminal sexual conduct charge, which carried a maximum sentence of life imprisonment.

Three weeks later, on May 16, 1991, another assistant prosecuting attorney from Kent County obtained an indictment against Balgooyen, charging him with one count of possession with the intent to deliver cocaine, which carried a mandatory minimum sentence of one year's imprisonment, and a maximum sentence of twenty years' imprisonment.

On the eve of Petitioner's jury trial, Balgooyen moved to withdraw as Petitioner's attorney, claiming that difficulties in establishing contact with Petitioner deprived Balgooyen of sufficient time to prepare his defense and to complete his financial arrangements with Petitioner. The trial court denied Balgooyen's motion, and reminded Petitioner of the prosecution's earlier plea offer of assault with intent to commit criminal sexual conduct, for which the maximum sentence would have been ten years' imprisonment, instead of life imprisonment which Petitioner faced if he proceeded to trial. Petitioner indicated that he continued to reject the prosecution's plea offer, and that he desired to go to trial. Following a three-day jury trial, Petitioner was found guilty of first-degree criminal sexual conduct on April 15, 1991.

About one month later, on September 13, 1991, Balgooyen appeared in Kent County Circuit Court, but before a judge different from the judge before whom Petitioner had

appeared, on the charge of intent to distribute cocaine. The prosecuting attorney assigned to Balgooyen's case, who was not the prosecuting attorney assigned to Petitioner's case, made a plea offer to reduce the charge to attempted possession with the intent to deliver cocaine. Balgooyen accepted the offer, pleaded guilty to the lesser charge, and was sentenced to five months' imprisonment plus probation.

Prior to Petitioner's sentencing on October 14, 1991, a court-appointed attorney replaced Balgooyen as Petitioner's counsel, possibly because Balgooyen's license to practice law may have been suspended as of his date of conviction under Michigan Court Rule 9.120. Yet another prosecuting attorney from Kent County represented the State of Michigan at Petitioner's sentencing. Petitioner pleaded guilty to being a second felony offender in exchange for the dismissal of the information charging him as being a fourth felony offender, and was sentenced to a term of twenty-five to forty years' imprisonment.

Petitioner appealed his conviction to the Michigan Court of Appeals raising, among other things, a claim that Balgooyen's pending drug charge in the same county in which Petitioner was tried and convicted created a conflict of interest which denied Petitioner his right to the effective assistance of counsel *per se*. As far as the record indicates, this was the first time that Petitioner raised this issue. At the same time Petitioner filed his appeal with the Michigan Court of Appeals, he also filed a motion to remand for an evidentiary hearing in the trial court, requesting further factual development regarding his ineffective assistance of counsel claims. Although Petitioner alleged six claims of ineffective assistance by Balgooyen for which further factual development was necessary, only one allegation involved Balgooyen's potential conflict of interest. And even that allegation was made in reference to Petitioner's allegation that Balgooyen was ineffective for failing to challenge the composition of the jury pool. Specifically, Petitioner alleged as follows:

The Sixth Circuit has recently considered the application of § 2254(e)(2) in light of the Supreme Court's decision in *Williams*. *See Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001). In *Greer*, this Court explained its decision that the defendant had diligently requested, and thus was entitled to, a hearing as follows:

In the case before us, petitioner pursued his ineffective assistance of appellate counsel claim with proper diligence, raising it first – albeit prematurely – in his petition for post-conviction relief and then in his motion for delayed reconsideration. Both of these pleadings requested an evidentiary hearing, which was never afforded by the Ohio courts. Consistent with *Williams v. Taylor*, therefore, we conclude that petitioner is not precluded from an evidentiary hearing as he exercised the necessary diligence in attempting to establish the factual record in state court. Accordingly, we remand this matter to the district court with instructions to accord petitioner an evidentiary hearing in which to establish whether appellate counsel rendered constitutionally ineffective assistance with respect to the penalty phase of petitioner's trial.

*Id.* at 681; *see also Barnes v. Elo*, 231 F.3d 1025 (6th Cir. 2000) (without citing § 2254(e)(2), federal appeals court remanded § 2254 case for an evidentiary hearing, noting that defendant had sought a *Ginther* hearing in the Michigan State Court of Appeals, and had been denied leave to appeal to the Michigan Supreme Court).

Smith has demonstrated the necessary diligence to escape the bar of § 2254(e)(2). Smith's efforts to obtain an evidentiary hearing in the Michigan state courts are virtually identical to the defendant's efforts in *Barnes* and arguably more diligent than the defendant's in *Greer*. In this case, acknowledging that his ineffective assistance claim relied on non-record facts, Smith timely moved the Michigan Court of Appeals to remand the case to the Circuit Court for a *Ginther* hearing. That court denied the motion. The Michigan

satisfies two statutory exceptions.[4]    For purposes of § 2254(e)(2), a defendant "fail[s] to develop the factual basis of a claim" in the state courts when there is a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000).

In *Williams*, the Supreme Court defined a prisoner's diligence as "a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful." *Id.* at 435. Typically, this will require "that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. Thus, when a defendant diligently seeks an evidentiary hearing in the state courts in the manner prescribed, but the state courts deny him that opportunity, he can avoid § 2254(e)(2)'s barriers to obtaining a hearing in federal court. *Id.*

---

[4]Section 2254(e)(2) provides in full:

  If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –

  (A) the claim relies on –
    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; *and*

  (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).

6.    Mr. Smith, who is black, also wishes to claim on appeal that counsel was ineffective because he failed to challenge the composition of the jury based on the underrepresentation [sic] of blacks. (This Court can take judicial notice that the under-representation of blacks on Kent County Circuit Court juries is a subject of ongoing concern in Kent County.) Counsel's failure to raise this claim may have been the result of a conflict of interest created by a felony drug charge pending against him in the Kent County Circuit Court. (Kent County Circuit Court No. 91-54842-FH.) (Alternatively, Mr. Smith wishes to claim that he was denied his federal and state constitutional right to a trial by jury because the jury members did not represent a fair cross-section of the community. See *Duren* v *Mississippi*, 438 US 357; 99 SCt 664; 58 LEd2d 579 (1979).)

(J.A. at 90; Petitioner's Motion to Remand.)

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished *per curiam* opinion, opining that "[b]ecause the judge and prosecutor involved in counsel's [Balgooyen's] case were not the same as defendant's, no actual conflict of interest has been shown." *People v. Smith*, No. 148757, slip op. at 1 (Mich. Ct. App. July 11, 1995) (unpublished *per curiam*) (citing *People v. Pickens*, 521 N.W.2d 797 (Mich. 1994)). Apparently, in light of the court's decision, Petitioner's motion to remand for an evidentiary hearing was denied.

On July 31, 1995, Petitioner filed an application for leave to appeal to the Michigan Supreme Court, again raising the ineffective assistance of counsel issue. Leave was granted on that issue, along with an evidentiary claim, but the supreme court affirmed Petitioner's conviction. *See People v. Smith*, 581 N.W.2d 654 (Mich. 1998). The court opined in relevant part that Petitioner "cited no evidence to suggest that defense counsel actively lessened his defense as a result of his pending felony charge, nor do we find evidence of an actual conflict of interest on the record. To the contrary, defense

counsel vigorously pursued his objections and presented a strong case." *Id.* at 658.

Petitioner filed the instant application for a writ of habeas corpus in the district court raising the single issue of ineffective assistance of counsel. Specifically, Petitioner argued that "because his trial counsel was being prosecuted on a drug charge in the same county in which Petitioner was being tried, a conflict of interest existed which created a structural defect, thereby denying Petitioner his Sixth Amendment right to the effective assistance of trial counsel." (J.A. at 6-7; Petition for Writ of Habeas Corpus.) The district court referred Petitioner's case to a magistrate who recommended that the application be denied. In a memorandum opinion, the district court adopted the magistrate's recommendation, opining in relevant part as follows:

> The state court's conclusion that defendant "cited no evidence to suggest that defense counsel actively lessened his defense as a result of his pending felony charge . . ." is amply supported by the record. Counsel conducted a vigorous defense, lodging appropriate objections to evidence, engaging in extensive and competent cross-examination, and presenting testimony of defendant and two other witnesses. The Michigan Supreme Court reasonably concluded that petitioner failed to show any adverse effect on his representation by counsel's conflict of interest.

> As a result, the decision of the Michigan Supreme Court that petitioner was not denied his Sixth Amendment right to effective assistance of counsel was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

(J.A. at 99; Memorandum Opinion Adopting Report and Recommendation (alteration in original).) The district court thereafter entered its corresponding order denying Petitioner's

---

hostage to the Office of the Prosecutor. As a result, he could have feared (not irrationally) the consequences to himself and felt "compelled to refrain" from challenging an allegedly long tolerated, but inappropriate, courthouse practice with respect to the selection of "jurors." *See Holloway v. Arkansas*, 435 U.S. at 489-90. In my opinion, Smith should have an evidentiary hearing in order to enable the district judge to determine whether, in the unusual circumstances here, Balgooyen retained that "indispensable element of . . . effective performance . . .[,] the ability to act independently of the Government and to oppose it" on a subject about which the Office of the Prosecutor and the Kent County Court, or any court, would be understandably highly sensitive. *See Ferri v. Ackerman*, 444 U.S. at 204.

The heightened scrutiny, which I believe Balgooyen's suspect conflict, admitted lack of preparation and alleged chemical impediments require, should also include a close district court examination of Balgooyen's role with respect to Judge Lieber's open court admonition that Smith carefully reconsider, and counsel with Balgooyen about, the prosecution's eve-of-trial offer of a 10-year sentence instead of risking a much longer sentence, including life imprisonment. Hindsight makes clear, without the aid of any presumption, the dire consequences of Smith's decision: 25 to 40 years instead of 10. An evidentiary hearing should also explore whether Balgooyen, pressed for time as he was, did in fact advise Smith ("in detail" or otherwise) about the plea offer, and, if he did, the extent and substance of that advice.

## C.    Antiterrorism and Effective Death Penalty Act

In reaching this conclusion, I am mindful of the fact that the Antiterrorism and Effective Death Penalty Act (AEDPA) limits federal habeas review of a state court criminal conviction where an evidentiary hearing is sought. *See* 28 U.S.C. § 2254(e)(2). Under that section, a defendant who "failed to develop the factual basis of a claim in State court proceedings" cannot obtain an evidentiary hearing unless he

Experience teaches that in cases featuring allegations of non-consensual oral sex between persons of the same sex, but different races, preconceptions can strongly influence the credibility judgments of professedly impartial triers of fact. In such cases, jury selection is a critical, if not the most critical, responsibility of an effective criminal defense counsel. The record of Balgooyen's *voir dire* examination of the particular venire that the Kent County Court system delivered to the courtroom about its attitudes as to race and sex may have been appropriate as far as it went. But Smith's application for a remand expressed concern that Balgooyen made no issue of an allegedly discriminatory process by which the Kent County courthouse system drew all of its "juries," (J.A. at 90, described *supra* p. 6-7), including, but not limited to the venire from which Balgooyen and the prosecutor picked the petit jury which returned the verdict that Smith was guilty.

Balgooyen may have made no issue of the Kent County practice for selecting jurors because it was, and is, quite correct and he knew it. Or, unprepared as he was on the eve of trial, and possibly under the influence, he may have never thought of raising the issue, or, thinking of it, was too preoccupied with last minute trial preparation to have time to develop and raise it. In either of those events, Smith's present concerns about Balgooyen's conflict of interest may be beside the mark. But heightened scrutiny of the record should have alerted the magistrate or the district judge to the fact that even if Balgooyen was considering how to protect his muscular, gay, African-American client from jury bias, he was very possibly equally, if not more, concerned about his own fate and the possibility of a favorable plea bargain for himself, such as the 5-month sentence that he negotiated after his client rejected a favorable plea offer and stood convicted. When he was advising Smith just before trial, even though he was being prosecuted by an assistant different from the one who opposed him in Smith's case, he could not know whether, or when, those two exchanged information about the two cases at hand or had a superior familiar with both. In the circumstances, Balgooyen could have felt that his liberty was

---

application for the writ, and it is from this order that Petitioner now appeals.

## DISCUSSION

When reviewing a district court's decision regarding a petition for a writ of habeas corpus brought under 28 U.S.C. § 2254, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *See Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000).

### A.  AEDPA Standards

AEDPA provides federal habeas relief for a state court defendant if the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court[,]" 28 U.S.C. § 2254(d)(1), or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court adjudication is "contrary to" Supreme Court precedent under §2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Williams v. Taylor*, 120 S. Ct. 1495, 1519 (2000). A state court adjudication involves "an unreasonable application of" Supreme Court precedent under § 2254(d)(2), "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case," or if the court unreasonably refuses to extend, or unreasonably extends, existing legal principles from the Court's precedents to a new context. *Id.* at 1520.

"Whether [Petitioner] was deprived of his right to effective assistance of counsel is a mixed question of law and fact that we review de novo." *Hunt v. Mitchell*, 261 F.3d 575, 580 (2001) (citing *Olden v. United States*, 224 F.3d 561, 565 (6th Cir. 2000)). This Court applies the "unreasonable

application" prong of § 2254(d)(1) to mixed questions of law and fact. *Id.* (citing *Harpster v. Ohio*, 128 F.3d 322, 327 (6th Cir. 1997)). The Supreme Court has cautioned that a federal habeas court may not overturn a state court's decision simply because it concludes that a state court misapplied Supreme Court precedent; rather, the state court's application of Supreme Court precedent must also be unreasonable. *See id.* (citing *Williams*, 529 U.S. at 411).

**B.  Supreme Court Precedent as to Ineffective Assistance of Counsel Claims Based Upon Counsel's Conflict of Interest**

"It has long been recognized that the right to counsel [under the Sixth Amendment] is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In this regard, the Court opined in *Strickland v. Washington*, 466 U.S. 668, 694 (1984) that in general, in order for a criminal defendant to prevail on a claim for ineffective assistance of counsel under the Sixth Amendment, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." According to *Strickland*, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. *Id.*; *see also Bell v. Cone*, 535 U.S. 685, ___, 122 S. Ct. 1843, 1850 (2002) ("Without proof of both deficient performance and prejudice to the defense, [under *Strickland*] . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand.") (internal quotation marks and citation omitted).

However, *Strickland* also recognized that "[i]n certain Sixth Amendment contexts, prejudice is presumed." *See Strickland*, 466 U.S. at 692. Citing *United States v. Cronic*, 466 U.S. 648, 659 & n.25 (1984), the *Strickland* Court recognized that "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result

to possible pretrial plea negotiations and in the sentencing process." *Id*. (Burger, C.J.); *see also Mickens*, 122 S. Ct. at 1246 (Kennedy, J., concurring) (in a related context, disparaging a "wooden rule" and emphasizing the importance of an evidentiary hearing and district court findings on the effect of the conflict on the representation).

The foregoing considered, I believe that, even though Balgooyen's conflict is not on "all fours" with the joint representation at issue in *Cuyler*, it is even more "suspect." It had a stronger tendency to influence, if not compel, him to refrain from actions potentially advantageous to his client that an effective counsel would take. That tendency should have aroused the District Court's serious suspicions and prompted it to examine the entire state court record with heightened scrutiny.

**B.  Evidentiary Hearing**

A close examination of the state court record by the district court would have led to the discovery that there were two critical phases of Balgooyen's representation which should have been explored with care in an evidentiary hearing: (1) his failure to challenge the composition of the Smith jury in light of his allegations of a judicially noticeable ongoing concern about the underrepresentation of African-Americans on Kent County Circuit Court venires, from one of which the Smith jury was drawn, and (2) his role in Smith's fateful eve-of-trial rejection of the offer of the prosecution of a ten-year sentence in exchange for a plea of guilty, in light of the trial judge's pointed admonition to Smith, with respect to the prospect of a life sentence, that he seek Balgooyen's advice, and his admonition to Balgooyen to render it, "in great detail." *See supra* p. 4.

The jury trying Smith was called on to resolve a swearing match between the direct testimony of a 16-year old (17 at the time of trial) white male, corroborated by the hearsay testimony of his mother, and the direct, categorical, but uncorroborated, denial by Smith, a then 31-year old African American, who took the stand in his own defense.

*States v. Cronic*, 466 U.S. 648, 654 n.19 (1984) (citing *Tollett v. Henderson*, 411 U.S. 258, 266-8 (1973)). Finally, highly relevant to the circumstances here, Supreme Court decisions teach that "an indispensable element of the effective performance of [defense counsel's] responsibilities is the ability to act independently of the Government and to oppose it in adversary litigation." *Ferri v. Ackerman*, 444 U.S. 193, 204 (1979).

## A. Effective Assistance of Counsel and Conflicts of Interest

A Supreme Court majority has established a clear framework for evaluating the effectiveness of counsel where one lawyer represents more than one defendant in a criminal case. *See Holloway v. Arkansas*, 435 U.S. at 489-91; *Cuyler v. Sullivan*, 466 U.S. at 348; *see also Strickland v. Washington*, 466 U.S. at 694; *Mickens v. Taylor*, 122 S. Ct. at 1240-46; *see also* Majority Op. at 7-11 for thorough summary of facts and precise holdings of these cases. My colleagues here apply that Supreme Court precedent quite literally to the unique facts before us, concluding that the only clear and relevant Supreme Court law establishes that conflicts of interest arising out of joint representation, the precise conflict at issue in *Cuyler*, trigger *Cuyler*-type analysis and relief.

Obviously, *Cuyler* is clearly established and relevant Supreme Court law. But it is not the totality of it. The reality is that conflicts come in all shapes and sizes, only one of which is joint representation. In my view, and critical to my analysis of the present case, the Supreme Court's decision in *Holloway* clearly established the ultimate, functionally governing, legal rationale for federal habeas review for any convicted defendant represented in state court by conflicted counsel, not merely joint representation. *Holloway v. Arkansas*, 435 U.S. at 489-90. As the Court explained there, "[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. . . . [T]he evil is in what the advocate finds himself compelled to *refrain* from doing, not only at trial, but also as

in prejudice. So are various kinds of state interference with counsel's assistance." *Strickland*, 466 U.S. at 692. More specifically, in *Cronic*, the Court noted that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified[,]" and found such circumstances to include the "complete denial of counsel" or the denial of counsel "at a critical stage" of the defendant's trial; the failure to "subject the prosecution's case to meaningful adversarial testing[;]" and those circumstances in which counsel is called upon to render assistance where competent counsel very likely could not, such as in *Powell v. Alabama*, 287 U.S. 45 (1932). *Cronic*, 466 U.S. at 659-62.

*Strickland* further recognized that "[o]ne type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice" than that found in the type of circumstances described in *Cronic*. *See Strickland*, 466 U.S. at 692. Specifically, the type of ineffectiveness claim referred to by *Strickland* in this regard was that of *Cuyler v. Sullivan*, wherein the Court held that prejudice is presumed for purposes of an ineffective assistance of counsel claim only if the defendant demonstrates that "'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).

The *Sullivan* standard grew out of the Court's prior recognition that when "a trial court improperly requires joint representation over timely objection[,]" ineffective assistance of counsel is presumed. *Holloway v. Arkansas*, 435 U.S. 475, 488 (1978) (citing *Glasser v. United States*, 315 U.S. 60 (1942)). The Court in *Holloway* held that where counsel is representing multiple defendants at trial, and timely objects in open court to the joint representation but is nonetheless forced to represent the co-defendants, an automatic reversal is required unless the trial court has determined that there is no conflict. *Id.* The Court reasoned that a presumption of prejudice to the defendants is proper under such circumstances because

in a case of joint representation of conflicting interests[,] the evil . . . is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible. Thus, an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation.

*Id.* (emphasis in original).

Later, in *Sullivan*, the Supreme Court declined to extend *Holloway's* automatic reversal rule to cases in which there was no objection made to the joint representation at trial. Rather, the Court found that "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial [to joint representation] must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 348. The Court also noted that "nothing in [its] precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case." *Id.* at 346. Instead, "[a]bsent special circumstances, . . . trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." *Id.* (footnote omitted). The Court reasoned that "trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel[,]" such that "[u]nless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Id.* (footnote omitted). Therefore, pursuant to *Sullivan*, where counsel engages in joint representation and makes no objection to the

(*Id.*) The district court also made no reference either to Balgooyen's role in jury selection or the rejected 10-year plea bargain and denied Smith's § 2254 petition.

## II. DISCUSSION

I agree with the majority that the Supreme Court has clearly established that, at a minimum, a federal habeas court must grant a writ to a state court petitioner who (1) over his protest and without further inquiry, was represented by counsel who also represented another defendant in that case, *Holloway v. Arkansas*, 435 U.S. 475, 489-91 (1978); (2) fails to object to dual representation, but demonstrates that it created an actual conflict that adversely affected counsel's performance, *Cuyler v. Sullivan*, 466 U.S. 335, 348 (1980); or (3) demonstrates that, but for his counsel's unprofessional errors, the result of the proceedings would have been different, *Strickland v. Washington*, 466 U.S. 668, 694 (1984). I also agree that Smith has not *yet* satisfied these formulae as they have been recently construed. *See Mickens v. Taylor*, ___ U.S. ___, 122 S. Ct. 1237, 1240-46 (2002).[3]

However, as stated, I disagree, with the ruling that Smith's request for an evidentiary hearing is moot. Supreme Court decisions clearly established long ago that a person " . . . charged with crime . . . requires the guiding hand of counsel at *every step in the proceedings against him*." *See Powell v. Alabama*, 287 U.S. 45, 68-69 (1932) (emphasis added), and that the "right to counsel is the right to the effective assistance of counsel," *see McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). It is also clear that the right to effective assistance of counsel applies at the plea stage of the proceedings. *Hill v. Lockhart*, 474 U.S. 52 (1985). "[E]ven when there is a bona fide defense, counsel may still advise his client to plead guilty if that advice falls within the range of reasonable competence under the circumstances." *See United*

---

[3] *See also The Supreme Court, 2001 Term, Leading Cases*, 116 Harv. L. Rev. 200, 242-52 (2002) (critical analysis of *Mickens* and the precedents there addressed).

recommended that his petition be denied. Smith objected to the magistrate's report and recommendation.

In his objections to the magistrate judge's recommendation, Smith stated that he should be entitled to an evidentiary hearing to develop a record in support of his ineffective assistance claim. He asserted that he "did everything in his power to demonstrate individualized instances of prejudice on appeal." (J.A. at 82.) He attached his earlier motion to remand filed in the Michigan Court of Appeals (*see supra* pp. 6-7) which he characterized as "raising specific points of prejudice" justifying a hearing. (J.A. at 82.) He concluded, "[I]t would be inherently unfair and a denial of due process to dismiss this petition for failure to prove prejudice after Mr. Smith was unfairly prevented from doing so. This Court has the ability to order an evidentiary hearing on this aspect and at a minimum should order such a hearing in this case." (*Id.*)

On January 17, 2001, the district court, adopting the magistrate judge's recommendation, denied Smith's § 2254 petition. Regarding Smith's objection that he should be entitled to a hearing, the district court stated that Smith "fails to identify what facts he would attempt to prove at an evidentiary hearing that would support his claim of adverse effect." (*Id.* at 98.) The court noted that in "his state-court requests for a hearing, [Smith] identified specific alleged failings of counsel at trial," but it stated that such errors "are subject to review on the trial record, and do not require a separate evidentiary hearing." (*Id.*) Based on its own review of the trial record, the district court found that the "state court's conclusion that defendant 'cited no evidence to suggest that defense counsel actively lessened his defense as a result of his pending felony charge' is amply supported by the record." (*Id.* at 99.) The court continued, "[c]ounsel conducted a vigorous defense, lodging appropriate objections to evidence, engaging in extensive and competent cross-examination, and presenting testimony of defendant and two other witnesses. The Michigan Supreme Court reasonably concluded that petitioner failed to show any adverse effect on his representation caused by counsel's conflict of interest."

joint representation, and nothing reasonably indicates to the trial court that a conflict exists, a convicted defendant raising an ineffective assistance of counsel claim must demonstrate that 1) an actual conflict existed that 2) affected his counsel's performance. *Id.* at 348.

Recently, in *Mickens v. Taylor*, 535 U.S. 162, ___, 122 S. Ct. 1237, 1239 (2002), the Supreme Court had before it the question of "what a defendant must show in order to demonstrate a Sixth Amendment violation where the trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known." In affirming the Fourth Circuit's *en banc* denial of the petitioner's application for the writ brought on the basis of ineffective assistance of counsel, the Court opined:

> Since this was not a case in which (as in *Holloway*) counsel protested his inability simultaneously to represent multiple defendants; and since the trial court's failure to make the *Sullivan*-mandated inquiry does not reduce the petitioner's burden of proof; it was at least necessary, to void the conviction, for petitioner to establish that the conflict of interest adversely affected his counsel's performance. The Court of Appeals having found no such effect, *see* 240 F.3d, at 360, the denial of habeas relief must be affirmed.

*Id.* at 1245.

Having so found, the Court expressly cautioned that its holding was limited to the issue before it—i.e., what burden of proof under the *Sullivan* rule was required by a petitioner to succeed on an ineffective assistance of counsel claim when the trial court did not inquire into a potential conflict of interest of which it knew or should have known. *Mickens*, 122 S. Ct. at 1245. The Court noted that the type of conflict itself at issue in *Mickens* was one of successive representation, not joint representation, and that the *Sullivan* rule, although having been "unblinkingly" applied by the circuits to a bevy of various ethical attorney conflicts, had never been extended by the Supreme Court to conflicts other

than joint representation at trial. *Id.* 1245-46 (citing examples of various types of ethical conflicts of interests wherein the circuits have applied the *Sullivan* rule). The Court therefore emphasized that although it adjudicated the question before it, it did so under the "assumption" that the case properly proceeded under *Sullivan* in the lower courts. However, the Court cautioned that its decision should not be "misconstrued" as extending the *Sullivan* rule to conflicts other than joint representation. *Id.* Specifically, the Court emphasized that

> [i]n resolving this case on the grounds on which it was presented to us, we do not rule upon the need for the *Sullivan* prophylaxis in cases of successive representation [or alleged conflicts based upon anything but joint representation]. *Whether Sullivan should be extended to such cases remains, as far as the jurisprudence of this Court is concerned, an open question.*

*Id.* at 1246 (emphasis added).

### C. Application to Petitioner's Case

#### 1. Michigan Appellate Courts' Decisions

The Michigan Court of Appeals found that Petitioner's ineffective assistance of counsel claim failed inasmuch as "the judge and prosecutor involved in counsel's case were not the same as defendant's[; therefore,] no actual conflict of interest has been shown." *People v. Smith*, No. 148757, slip op. at 1 (Mich. Ct. App. July 11, 1995) (unpublished *per curiam*) (citing *People v. Pickens*, 521 N.W.2d 797 (Mich. 1994)).

The Michigan Supreme Court also held that Petitioner's ineffective assistance of counsel claim failed, opining as follows:

> Defendant argues that he was denied the effective assistance of counsel in violation of his Sixth Amendment rights because his attorney was charged with

actively lessened his defense as a result of his pending felony charge, nor do we find evidence of an actual conflict of interest on the record." Without mention of either jury selection or plea negotiation, and focusing entirely on the record of the trial before the impaneled jury, the court continued "[t]o the contrary, defense counsel vigorously pursued his objections and presented a strong case." *Id.* at 658. The court, without reference to Smith's motion to the Michigan Court of Appeals for a remand for purposes of a *Ginther* hearing, stated inexplicably, "[i]f a convicted defendant believes that his attorney's representation was below an objective standard of reasonableness, the appropriate procedure is to seek a *Ginther* hearing." *Id.* (citing *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973)).

### C. Collateral Attack

*Federal District Court*: On December 11, 1998, Smith filed a petition in federal district court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The petition asserted that Balgooyen's conflict of interest entitled Smith to a new trial.

On September 6, 2000, a magistrate judge to whom the district court referred the matter stated, "[A]n actual conflict of interest is obvious from the fact that defense counsel had criminal charges pending against him in Kent County at the time of petitioner's trial in the Kent County Circuit Court. The actual conflict is reinforced by the fact that defense counsel pled guilty to a reduced charge just a month after petitioner's trial." (J.A. at 74-75.) He concluded, "Under the circumstances, defense counsel had every reason to maintain good relations with the prosecutor's office during petitioner's trial." (*Id.* at 75.) However, without reference to jury selection, Judge Lieber's admonition about the pretrial plea offer, or the difference between the 10-year offer and the ultimate 25 to 40-year sentence, the magistrate judge expressed his opinion that Smith had failed to show that this conflict adversely affected Balgooyen's performance, and thus

(J.A. at 27.)  Having found no conflict of interest, the Court of Appeals did not reach the question of whether the alleged conflict had any effect on Balgooyen's performance.

*Michigan Supreme Court*:  On August 1, 1995, Smith filed an application for leave to appeal in the Michigan Supreme Court.  In his application, Smith stated, "Mr. Smith made a motion to remand for the purpose of developing an evidentiary record to support his claim that he did not receive the effective assistance of counsel."  Application for Leave to Appeal at vi, *People v. Smith* (Mich. filed Aug. 1, 1995).  The application continued, "[t]he denial of the motion was clearly erroneous because it denied Mr. Smith the opportunity to make an evidentiary record necessary to support his claim that he did not receive the effective assistance of counsel."  *Id.* (citing *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973)).  Smith attached to his application a copy of the remand motion which he had filed in the lower appellate court.  In a footnote in his application, Smith stated, "[s]hould this Court find that a showing of a specific prejudice is required, the appropriate remedy would be to remand this case to the trial court for the purpose of holding an evidentiary hearing at which Mr. Smith will have the opportunity to show specific prejudice."  *Id.* at 23 n.3.  As its opposition to Smith's application, the state submitted the identical brief it had filed in the Michigan Court of Appeals, complete with the inaccurate representation that Smith had never requested a hearing.  Answer in Opposition to Application for Leave to Appeal, *People v. Smith*, No. 103833, Attachment 1, at 21 (Mich. filed Aug. 11, 1995).

The Michigan Supreme Court granted Smith's application for leave to appeal with respect to two issues, one of which was "whether the defendant was denied his constitutional right to effective assistance of counsel where, at the time of the trial, his attorney had been charged with a criminal offense in the same county." *People v. Smith*, No. 103833 (Mich. Mar. 7, 1997).  On March 17, 1998, the Michigan Supreme Court affirmed Smith's conviction and sentence.  *See People v. Smith*, 581 N.W.2d 654 (Mich. 1998).  The court stated that Smith "cited no evidence to suggest that defense counsel

a felony pending in the same county.  Defendant asks that we presume a conflict of interest exists whenever an attorney is being prosecuted in the same county as a criminal defendant whom he represents.  We decline to create such a rule and hold instead that in order to demonstrate that a conflict of interest has violated his Sixth Amendment rights, a defendant "must establish that an actual conflict of interest adversely affected his lawyer's performance."  *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

*People v. Smith*, 581 N.W.2d 654, 659 (Mich. 1998) (footnote omitted).  The court concluded that "[i]n this case, defendant has cited no evidence to suggest that defense counsel actively lessened his defense as a result of his pending felony charge, nor do we find evidence of an actual conflict of interest on the record.  To the contrary, defense counsel vigorously pursued his objections and presented a strong case." *Id.* at 660.

## 2.   District Court's Order

The district court concluded that the Michigan appellate courts did not unreasonably apply Supreme Court precedent to Petitioner's claim of ineffective assistance of counsel based on counsel's alleged conflict of interest.  The court held that the Michigan courts properly found that in order for Petitioner to succeed on his claim, he not only had to prove that a conflict existed, but that the conflict adversely affected his counsel's performance under *Sullivan*.  In doing so, the district court rejected Petitioner's claim—that where he has shown that the conflict was actual, and not potential, prejudice is presumed—on the basis that *Sullivan* commands a showing of both actual conflict and adverse effect before prejudice will be presumed for purposes of succeeding on an ineffective assistance of counsel claim.  Because Petitioner failed to demonstrate that he was adversely effected by his counsel's alleged conflict, and because the record showed no indication that a factual record could be developed to support Petitioner's claim, the district court denied Petitioner's application for the writ.

### 3.   *De Novo* Review of District Court's Order

Because the question of whether the *Sullivan's* lessened standard of proof for a claim of ineffective assistance of counsel based upon an attorney's conflict of interest for anything other than joint representation remains an "open question" in the jurisprudence of the Supreme Court, *Mickens*, 122 S. Ct. at 1246, and in fact was an open question at the time Petitioner's case was heard, Petitioner's claim fails because it is not based upon clearly established Supreme Court precedent as mandated by AEDPA.

Indeed, in *Williams v. Taylor*, 529 U.S. 362, 412 (2000), the Supreme Court held that for purposes of the AEDPA, "whatever would qualify as an old rule under our *Teague* [*v. Lane*, 489 U.S. 288 (1989)] jurisprudence will constitute 'clearly established Federal law, as determined by the Supreme Court of the United States' under § 2254(d)(1)." Pursuant to *Teague*, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *See Teague v. Lane*, 489 U.S. 288, 301 (1989) (emphasis in original). In determining whether the relief requested would constitute a new rule, the question becomes "whether a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution." *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994) (internal quotation marks and citation omitted; alteration in *Bohlen*).

Accordingly, applying *Teague* principles to the matter at hand, "clearly established federal law as determined by the Supreme Court of the United States" means that the rule sought by Petitioner here—that the lessened standard of proof for an ineffective assistance of counsel claim as set forth in *Cuyler v. Sullivan* be extended to conflicts of interest other than those of multiple concurrent representation—must have been dictated by *Sullivan*. It clearly was not dictated by *Sullivan* and, as explained by the Court in *Mickens*, the

(J.A. at 90.) Smith's motion further alleged that Balgooyen's "performance was deficient because at the time of trial counsel's ability to practice law competently was materially impaired by drug and alcohol addiction and/or material consequences from the prior active addiction behaviors." (*Id.* at 89.) On July 7, 1993, the Michigan Court of Appeals denied the motion to remand, stating only that Smith had "fail[ed] to persuade the Court of the necessity of a remand *at this time*." *People v. Smith*, No. 148757 (Mich. Ct. App. July 7, 1993) (emphasis added).

In his brief on the merits, Smith argued that Balgooyen's concurrent prosecution created a conflict of interest so severe that Smith was entitled to relief without having to prove that the conflict had any adverse effect on Balgooyen's representation. The state responded, in apparent disregard of Smith's motion for a remand for an evidentiary hearing, that on the matter of whether "counsel's performance was deficient and that, under an objective standard of reasonableness, counsel was not functioning as an attorney as guaranteed under the Sixth Amendment," (citations omitted), Smith " . . . did not seek an evidentiary hearing." Appellee's Brief, No. 148757, at 21 (Mich. Ct. App. filed Oct. 25, 1993).

On July 11, 1995, the Michigan Court of Appeals affirmed Smith's conviction and sentence. Nothing in the record indicated the extent, if any, to which the assistant prosecuting attorneys in the Office involved in Smith's and Balgooyen's cases, or their supervisors, formally or informally exchanged information about both cases, particularly the plea bargains negotiated to dispose of them. Nor was there any information in the record about whether assistants in the Office customarily negotiate plea bargains with or without the approval of their supervisors, including *the* Prosecuting Attorney. Nevertheless, without revisiting its earlier decision not to remand (as its denial of that motion implied it might), that court disposed of Smith's ineffective assistance claim with the bare conclusion that, "[b]ecause the judge and prosecutor involved in [Balgooyen's] case were not the same as defendant's, no actual conflict of interest has been shown."

to remand his case to the trial court for an evidentiary hearing to develop additional factual support for his ineffective assistance of counsel claim, Motion to Remand, No. 148757 (Mich. Ct. App. filed May 14, 1993), as contemplated by Michigan law, *see People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).[2]   The motion asserted several examples of Balgooyen's allegedly deficient performance as trial counsel, including:

> Mr. Smith, who is black, also wishes to claim on appeal that counsel was ineffective because he failed to challenge the composition of the jury based on the underrepresentation of blacks. (This Court can take judicial notice that the under-representation of blacks on Kent County Circuit Court juries is a subject of ongoing concern in Kent County.) Counsel's failure to raise this claim may have been the result of a conflict of interest created by a felony drug charge pending against him in the Kent County Circuit Court. (Kent County Circuit Court No. 91-54842-FH) (Alternatively, Mr. Smith wishes to claim that he was denied his federal and state constitutional right to a trial by jury because the jury members did not represent a fair cross-section of the community. *See Duren v. Mississippi*, 438 U.S. 357; 99 S. Ct. 664; 58 LE2d 579 (1979).)

---

[2]In *Ginther*, the Michigan Supreme Court held that

[a] defendant who wishes to advance claims that depend on matters not of record can properly be required to seek at the trial court level an evidentiary hearing for the purpose of establishing his claims with evidence as a precondition to invoking the processes of the appellate courts except in the rare case where the record manifestly shows that the judge would refuse a hearing; in such a case *the defendant should seek on appeal, not a reversal of his conviction, but an order directing the trial court to conduct the needed hearing*.

*Ginther*, 212 N.W.2d at 925 (emphasis added).

concerns which led to the *Sullivan* standard of proof for conflicts of joint representation may not be present in situations involving other types of conflicts. *See Mickens*, 122 S. Ct. at 1246. That "is not to suggest that one ethical duty is more or less important than another. The purpose of [the Court's] *Holloway* and *Sullivan* exceptions from the ordinary requirements of *Strickland*, however, is not to enforce the Canons of Legal Ethics, but to apply needed prophylaxis in situations where *Strickland* itself is evidently inadequate to assure vindication of the defendant's Sixth Amendment right to counsel." *Id.*

The fact that it was not until *Mickens* that the Court expressly stated that *Sullivan* does not support such an expansion, and the fact that the Court said so in *dicta*, does nothing to change the fact that the rule sought by Petitioner was not clearly established federal law at the time of his conviction nor is at the current time. Said differently, it is not *Mickens' dicta* that bars Petitioner's claim; rather, it is the *holding* of *Sullivan* (and of *Holloway v. Arkansas*, 435 U.S. 475 (1978) from which *Sullivan* arose) which bars Petitioner's case inasmuch as *Sullivan* applied only to joint representation and the Supreme Court has yet to extend *Sullivan's* reach to any other type of conflict. That is not to say that the Court may not do so in the future, but at the time Petitioner's case was heard, and indeed up until the current time, the Supreme Court has yet to extend *Sullivan*. Because Petitioner's claim does not rest upon a *Sullivan* conflict, Petitioner's claim does not rest upon "clearly established" federal precedent. Thus, the decision from the Michigan appellate courts denying Petitioner relief was not unreasonable for purposes of AEDPA.

Moreover, it would be improvident for us to follow the other circuits, or even our own decisions on direct review, which have, in the words of *Mickens*, "unblinkingly" applied *Sullivan's* lessened standard to "all kinds of alleged attorney conflicts." *Mickens*, 122 S. Ct. at 1245. Petitioner's § 2254 application is governed by AEDPA, and therefore only decisions from the United States Supreme Court may be

relied upon as authority for relief. *See* 28 U.S.C. § 2254(d); *Williams,* 529 U.S. at 412; *see also Harris v. Stovall*, 212 F.3d 940, 944 (6th Cir. 2000) (holding that when reviewing a § 2254 petition under AEDPA, "clearly established" federal precedent for purposes of obtaining relief is governed by decisions from the United States Supreme Court, and it is error for a court to rely on authority other that of the Supreme Court of the United States).

We therefore agree with the district court that the Michigan appellate courts did not unreasonably apply Supreme Court precedent in denying Petitioner relief under his ineffective assistance of counsel claim; however, we do so based on the fact that Petitioner seeks relief on a basis not supported by clearly established federal law inasmuch as the Supreme Court has never applied *Sullivan's* lessened standard of proof to any conflict other than joint representation. *See City Management Corp. v. U.S. Chemical Co., Inc.*, 43 F.3d 244, 251 (6th Cir. 1994) (finding that this Court may affirm the district court for any reason supported by the record). As a result, Petitioner's request for an evidentiary hearing so as to establish whether his counsel's performance was affected by the alleged conflict of interest is moot.

## CONCLUSION

The district court's order denying Petitioner's application for a writ of habeas corpus brought under 28 U.S.C. § 2254 is **AFFIRMED**.

upset and Smith responded by taking him home. He denied that he had ever had any physical contact with Dewaard or threatened him in any way.

On August 15, 1991, the jury returned a verdict of guilty. Still mute about his conflict, Balgooyen filed no post-trial motions, such as a motion for new trial.

*Balgooyen's Plea and Sentence*: Between Smith's trial and sentencing, Balgooyen resolved his own criminal case. On September 13, 1991, before a different Kent County Circuit Court judge, he agreed to, and entered, a plea of guilty to the reduced charge of attempted possession with intent to deliver cocaine in exchange for a sentence of *five months* imprisonment plus probation and dismissal of the original charge with its 20-year maximum. He also ceased to represent Smith, being replaced at Smith's sentencing by a court-appointed attorney.[1]

*Smith's Plea and Sentence*: On October 14, 1991, Smith pleaded guilty to being a second felony offender, admitting to a conviction for burglary in 1979, in exchange for the dismissal of the fourth felony offender charge. Judge Lieber, consistent with his eve-of-trial warning, sentenced Smith, then 31, to a term of twenty-five to forty years imprisonment.

### B.  Direct Appeals

*Michigan Court of Appeals*:  Through appointed counsel Smith appealed his conviction to the Michigan Court of Appeals on the theory, among others, that Balgooyen's conflict of interest resulted in his being deprived of his Sixth Amendment right to the effective assistance of counsel. Defendant-Appellee's Brief on Appeal, No. 148757 (Mich. Ct. App. filed May 14, 1993).  Smith simultaneously moved

---

[1]Although the record does not reflect why Balgooyen terminated his representation of Smith, the fact that Michigan Court Rule 9.120 automatically suspends a lawyer's license to practice law as of the date of his conviction is judicially noticeable.

(J.A. at 123 (emphasis added).) The existing record does not disclose what discussions about the plea offer, if any, took place between Smith and Balgooyen, or between Balgooyen and the prosecutor in the remaining few hours before the trial.

*Smith's Trial and Verdict*: On August 13, 1991, with no further record mention of the plea offer, the trial of Smith on the criminal sexual conduct indictment commenced, with the trial of the habitual offender charge to follow, if necessary. After a routine voir dire, a jury was selected. Balgooyen's voir dire inquired about the attitudes of individual jurors in the venire about race and sex. However, he did not question the racial composition of the venire from which the Smith jury was selected or the process by which Kent County assembled venires.

At the trial, the prosecution called, among others, Dewaard and his mother. Dewaard testified that on several occasions he met Smith outside the gym for social activities, sometimes accompanied by Smith's regular boyfriend and roommate, Joel Huyser. Dewaard testified that late on his last and critical evening with Smith he accompanied Smith to his apartment. There Smith made various threats, including a bizarre proposal that they fight each other. If Smith at 217 pounds won, Dewaard would submit to oral sex; if Dewaard at 120 pounds won, he would not submit. Dewaard testified that when he refused to accept the challenge, Smith threatened (but did not injure) him with a pair of scissors, whereupon Dewaard submitted and went home.

Dewaard's mother testified, over objection, that her son returned home in the early hours of the morning in question, upset and muttering to himself, and that later that morning he told her something of what had transpired the previous night between himself and Smith. She then called the police.

Smith took the stand in his own defense. On the night in question, according to Smith, he had a conversation with Dewaard about the fact that he (Smith) was gay, that his roommate was his "companion" and that they had lived together for two years. He testified that Dewaard became

---

## CONCURRING IN PART, DISSENTING IN PART

---

OBERDORFER, District Judge, concurring in part and dissenting in part. I agree with the majority that Smith is not now entitled to the writ that he seeks. However, I respectfully disagree with the conclusion that his request for an evidentiary hearing in the district court is moot.

### I.  BACKGROUND

Because my view of the record differs in some respects from that of my colleagues, I will briefly summarize the aspects which influence my conclusion that the district court should have honored Smith's request for a hearing.

### A.   Facts

*Smith's Criminal Case*: In January 1991, Larry Donnell Smith, a 6 foot-1 inch, 217-pound, gay, African-American male bodybuilder was arrested on charges that he had threatened Joel Dewaard, a 5 foot-5 inch, 120-pound, white male who exercised at the same gym, with a pair of scissors and forced him to submit to oral sex. At the time of the alleged incident, Dewaard was 16 years old and Smith was 30 years old. Smith was charged under Michigan law with one felony count of first degree criminal sexual conduct and, subsequently, as a habitual offender, fourth degree. Maximum punishment for conviction on these charges was life imprisonment. His case was brought and prosecuted by an assistant in the Office of the Prosecuting Attorney of Kent County. Early on in the proceedings, Smith fired his court-appointed counsel and retained Jeffrey J. Balgooyen to conduct the defense.

*Balgooyen's Criminal Case*: Shortly after he was retained by Smith, on April 26, 1991, Balgooyen was charged under Michigan law with one felony count of possession with intent to deliver cocaine. He faced a mandatory minimum sentence

of one year and a maximum sentence of twenty years. His case was also brought and prosecuted by the Office of the Prosecuting Attorney of Kent County.

*Balgooyen's Motion To Withdraw*: Smith's trial was scheduled to begin on August 12, 1991. In court that morning, Balgooyen moved to withdraw as Smith's counsel. He claimed that difficulties in establishing contact with Smith had deprived him of sufficient time to complete their financial arrangements and to prepare Smith's defense. He made no mention of his own pending criminal case. Apparently oblivious of the fact that Balgooyen was under indictment by the same prosecutor's office (his case was being handled by a different assistant prosecutor and was assigned to a different judge), Judge Dennis B. Lieber, the Kent County Circuit Court trial judge assigned to Smith's case, denied the motion. He noted that the trial had already been delayed one month due to the court's own schedule and that Smith had opted to replace court-appointed counsel with retained counsel. He set trial to begin the following morning.

*Smith's Plea Offer*: After denying Balgooyen's motion to withdraw, Judge Lieber reminded Smith on the record that the prosecution had made a plea offer that would permit Smith to plead to assault with intent to commit criminal sexual conduct, with a maximum sentence of ten years, instead of the life sentence which Smith faced if he went to trial and lost. Judge Lieber engaged in the following colloquy with Smith and Balgooyen:

THE COURT: In the intervening time of 24 hours, I'm of the opinion that Mr. Smith will have to speak to Mr. Balgooyen, who is well-qualified to represent him by virtue of his lengthy experience. I should conclude with these remarks, too, so that I know that Mr. Smith knows that you are charged, sir, with criminal sexual conduct in the first degree, as you have known from your arraignment, with the potential of life or any term of years.

Also you are charged as a 4th felony offender which, again, grants to this Court the possibility of, upon conviction of the substantial criminal sexual conduct, a first degree charge, again, which includes the potential of a life sentence. That is what you're going into, Mr. Smith. The prosecution in this case has offered you the opportunity to plead to assault with intent to commit criminal sexual conduct, first degree, a ten-year felony offense; is that correct?

MR. BALGOOYEN: That's correct.

THE COURT: You should know then, sir, that is a substantial difference between the maximum possible sentence of ten years and that which you are presently facing which has a maximum sentence of any term of years up to life in prison.

Your attorney is best able to describe to you the impact of these two offenses in terms of time served, but it is clear to this Court if you plead, your sentence will be less than a conviction of the original charge because the sentencing guidelines provide for a much lower minimum sentence for a ten-year felony offense then [sic] a life felony offense; do you understand that?

MR. SMITH: Yes, I do.

THE COURT: Knowing and understanding that, it is you [sic] desire to go with the 4th felony supplement; is that correct?

MR. SMITH: Yes.

THE COURT: *You will have the opportunity, in my opinion, to discuss this matter in great detail with Mr. Balgooyen. I wanted to make sure that you knew what was coming from the bench before we proceed to trial in the morning.*