RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0039p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

TREON MCELRATH,

               *Petitioner-Appellant,*

      *v.*

THOMAS SIMPSON, Warden, Western
Kentucky Correctional Complex,

               *Respondent-Appellee.*

No. 07-5505

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 05-00060—Thomas B. Russell, Chief District Judge.

Argued: January 21, 2010

Decided and Filed: February 12, 2010

Before: GUY, CLAY, and KETHLEDGE, Circuit Judges.

—————————————

## COUNSEL

**ARGUED:** Christopher Nelson Lasch, SUFFOLK UNIVERSITY LAW SCHOOL, Boston, Massachusetts, for Appellant. Matthew Robert Krygiel, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee. **ON BRIEF:** Christopher Nelson Lasch, SUFFOLK UNIVERSITY LAW SCHOOL, Boston, Massachusetts, for Appellant. Matthew Robert Krygiel, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.

—————————————

## OPINION

—————————————

RALPH B. GUY, JR., Circuit Judge. Petitioner Treon McElrath, a state prisoner in Kentucky, appeals from the denial of his petition for writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner was convicted, along with codefendants Terrance Boykin and Andra Everett, of one count of complicity to murder and six counts of complicity to wanton endangerment arising out of a shooting that occurred on June 21, 1998. McElrath, who was

represented at trial and on appeal by the same attorney as Boykin, maintains that he received ineffective assistance of counsel in violation of the Sixth Amendment. The district court, having denied relief with respect to all of petitioner's claims, granted a certificate of appealability (COA) with respect to petitioner's claim that his "counsel labored under an impermissible conflict of interest" that manifested itself in counsel's decision to pursue a joint defense and counsel's failures in the pursuit of and advice regarding a possible guilty plea. This court expanded the certificate of appealability to include the claim that he was denied effective assistance of counsel because his attorney failed to properly advise him concerning the Commonwealth's five-year plea offer.

After review of the record and consideration of the arguments presented on appeal, we conclude that counsel's joint or dual representation of petitioner and Boykin resulted in an actual conflict that affected petitioner's representation in violation of his Sixth Amendment rights. Accordingly, we reverse the district court's denial of the writ on that basis and remand with instructions to conditionally grant the writ.

## I.

On the evening of June 21, 1998, Natasha Wilson and her boyfriend Corey Fitts were sitting on the front porch of her grandparents' house at 508 Bowden, in Clinton, Kentucky. Fitts saw McElrath driving his yellow Mustang past the house. Fitts was alarmed and feared that Terrance Boykin, McElrath's cousin, had come for revenge because Wilson and Fitts had both filed criminal charges against Boykin.[1] Wilson went inside the house and made a 911 call to police at 9:12 p.m., then returned to the porch and told Fitts that the police were going to pick up McElrath. Wilson's two grandparents and her three children were inside the house.

Fitts testified that some twenty minutes later, he saw two armed men turn the corner of the house and approach the porch where they were sitting. Fitts and Wilson ran for the door and entered at about the same time. Fitts escaped into the house and

---

[1] Although not detailed by the parties, the record indicates that Wilson had taken out a warrant against Boykin for unlawful imprisonment, burglary, and sexual abuse. Fitts had filed charges against Boykin and Everett for terroristic threatening.

jumped into the bathtub, but Wilson fell wounded inside the doorway. Wilson's grandmother called 911 at 9:23 p.m. to report that Wilson had been shot.

A few minutes before the first 911 call, Clinton Police Officer Brian Morrison had seen McElrath in his Mustang not far from Wilson's grandparents' house. Three other individuals were with McElrath but could not be identified because they ducked down in the car. Morrison went to the station to take Wilson's 911 call, and then checked whether there were any outstanding warrants for McElrath before receiving the second 911 call a few minutes later. Wilson was still alive when Morrison arrived at the scene, but she died without identifying her assailants.

At trial, Fitts positively identified Boykin and Everett, whom he knew, as the shooters. Fitts was impeached with evidence that he told police at the scene that "Treon done it." Two disinterested witnesses, Eric and Sammy Hunter, testified that McElrath was with them when the shooting occurred. They were visiting their parents, who lived 760 feet from the scene, on the night of the shooting and received an unexpected visit from McElrath. McElrath was with them for approximately ten minutes before the shooting, but left immediately when the shots were heard. McElrath later admitted that he had been in the area with Everett.

In nearby Union City, Tennessee, Officer Christopher Cummings was alerted about the shooting. Cummings went to 731 Vine Street, where McElrath was known to reside with his grandmother. There Cummings found McElrath, Boykin, and Everett together out front. McElrath's Mustang was searched, but nothing incriminating was found at that time. Four days later, on June 25, 1998, search warrants were obtained for the primary residences of McElrath, Boykin, and Everett, respectively.

At McElrath's residence at 731 Vine, McElrath was arrested on other charges after he ran, and his Mustang was searched again. This time, an ammunition clip for a .45 caliber weapon was found in the console. One of the six bullets in that clip bore the same bunter stamp as the .45 caliber casings found at the scene of the shooting, although the testimony was that the same bunter stamp would appear on between 200,000 and 400,000 bullets manufactured together. There was also evidence that this clip fit the .45

caliber handgun that had been used in the shooting, although such clips were conceded to be interchangeable.

The search of 316 North Holmes Street in Union City, where Boykin primarily resided with his grandmother, resulted in the seizure of one of the weapons used in the shooting. Specifically, officers found a .45 caliber Llama semi-automatic handgun located above the door frame inside a bedroom closet. In that same bedroom, police found letters, identification, and pay stubs bearing Boykin's name. A box containing ammunition for a .45 caliber handgun was also found in the house. Ballistics evidence offered at trial established that two .45 caliber casings and a bullet recovered at the scene of the shooting had been fired from this Llama .45 caliber handgun.[2]

McElrath and Boykin were jointly represented by Attorney Benjamin Lookofsky from arraignment through direct appeal. The Kentucky Court of Appeals found that, although McElrath had executed a waiver, the record contained no indication that the trial judge had advised either McElrath or Boykin concerning the possible conflict of interest as required by Kentucky Rule of Criminal Procedure (RCr) 8.30. *McElrath v. Commonwealth*, No. 2002-CA-1732, 2004 WL 1858228 (Ky. App. Aug. 20, 2004); *Boykin v. Commonwealth*, No. 2001-CA-2658, 2004 WL 1858230 (Ky. App. Aug. 20, 2004). Correspondence exchanged between McElrath and Attorney Lookofsky shortly before trial reflected counsel's advice concerning a five-year plea offer, which McElrath rejected, he contends, as a result of ineffective assistance of counsel. There was no written offer, however, and the Commonwealth would later dispute that such an offer was made.

Joint trial of McElrath, Boykin, and Everett commenced in February 1999. None of the defendants testified, and each was convicted of all counts. The jury recommended sentences of 22 years for complicity to murder and 5 years for each count of complicity

---

[2]Petitioner mistakenly argues that this handgun was found in McElrath's residence. Despite the prosecutor's reference in closing to the North Holmes Street address as McElrath's residence, it is evident from the trial transcript that the prosecution's evidence and arguments sought to establish that the .45 caliber handgun used in the shooting was found in Boykin's residence. As petitioner points out, defense counsel inexplicably referred to the residence on Holmes Street as "McElrath's family's home" in cross-examining Fitts.

to wanton endangerment. The trial judge accepted the recommendations and sentenced each to consecutive sentences totaling 52 years' imprisonment. McElrath's convictions were affirmed on direct appeal by the Kentucky Supreme Court (Case No. 1999-SC-0463-MR (Ky. Apr. 26, 2001)), as were Boykin's (Case No. 1999-SC-0462 (Ky. Apr. 26, 2001)). McElrath then moved for post-conviction relief pursuant to Kentucky Rule of Criminal Procedure 11.42. The trial court denied petitioner's motion in July 2002, the Kentucky Court of Appeals affirmed in August 2004, and the Kentucky Supreme Court denied discretionary review in March 2005.[3]

McElrath's habeas petition was filed on March 16, 2005. Respondent answered and moved for dismissal or summary judgment. The magistrate judge recommended dismissal of the petition in its entirety, which the district court adopted as modified with respect to some claims but remanded two claims for an evidentiary hearing. One of those two claims—whether petitioner's counsel was ineffective when advising him with respect to the Commonwealth's alleged five-year plea offer—is before us on appeal. In that regard, the magistrate judge found after an evidentiary hearing that, despite the prosecutor's repudiation of the offer, the weight of the evidence indicated that a five-year plea offer had been made and rejected. Nonetheless, the magistrate judge concluded that petitioner had not been denied effective assistance of counsel in connection with the plea offer and recommended that the remaining claims be dismissed.[4]

In a summary order, the district court accepted the recommendations, dismissed the habeas petition, and denied petitioner a certificate of appealability. Revisiting the last of these when presented with a separate motion for certificate of appealability, the district court was persuaded to grant a certificate of appealability with respect to the Sixth Amendment claim that

---

[3] Boykin also moved for post-conviction relief in state court to no avail.

[4] Petitioner argues, and the transcript reflects, that it was a misreading of the testimony for the federal court to also conclude that the prosecutor repudiated the existence of the plea offer before trial rather than in response to the motion for post-conviction relief. Close reading of defense counsel's testimony establishes that it was a hypothetical prediction of the prosecutor's response by way of explaining why he would not have advised his client of a non-existent plea offer.

counsel labored under an impermissible conflict of interest that manifested itself in counsel's decision to pursue a joint defense that was not in the petitioner's best interests and in counsel's failure to do the following: 1) pursue additional plea negotiations upon discovery of the unavailab[ility] of the five-year offer; 2) urge his client to express a willingness to testify against his co-defendant in exchange for another plea agreement; 3) discover the availability of the prosecution's key witness prior to trial; and 4) advise the petitioner prior to trial with respect to the consequences of said availability upon the wisdom of proceeding to trial with a joint defense.

Respondent objected to the inclusion of the enumerated sub-issues and moved for reconsideration. The district court denied the motion, explaining that each sub-issue was a possible manifestation of the arguably impermissible conflict of interest asserted by petitioner. The certificate of appealability was expanded by this court to include the claim that petitioner was denied effective assistance of counsel because his attorney failed to properly advise him concerning the Commonwealth's alleged five-year plea offer.[5]

## II.

In an appeal from a decision granting or denying habeas relief, we review the district court's legal conclusions *de novo* and its findings of fact for clear error. *Hill v. Hofbauer*, 337 F.3d 706, 710 (6th Cir. 2003); *Bugh v. Mitchell*, 329 F.3d 496, 500 (6th Cir. 2003). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which governs the petition in this case, a writ of habeas corpus may not be granted for any claim that was adjudicated on the merits in state court unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "was based on an unreasonable determination of the facts in light of the evidence

---

[5]This court denied respondent's request to eliminate the four sub-issues from the COA, emphasizing that the district court's COA decision is not appealable. *Sims v. United States*, 244 F.3d 509, 509 (6th Cir. 2001). To the extent that respondent's objection is based on a failure to exhaust state remedies, we are satisfied that petitioner exhausted the ineffective assistance of counsel claim based on the dual representation at trial. *See Whiting v. Burt*, 395 F.3d 602, 612-13 (6th Cir. 2005). While there is some question whether the plea-negotiation claims were "fairly presented to the state courts," it is apparent that petitioner exhausted claims both that the advice counsel gave concerning the plea offer was deficient and that counsel's conflict adversely affected the advice concerning the plea offer.

presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). To the extent that the state court did not assess the merits of a claim properly raised in the habeas petition, however, AEDPA deference does not apply and we review questions of law and mixed questions of law and fact *de novo*. *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

## A.      Sixth Amendment

The Sixth Amendment guarantees a criminal defendant's right to "have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "This right has been accorded, . . . 'not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.'" *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984)). Derivative of the right to counsel under the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Generally, a defendant alleging ineffective assistance of counsel must demonstrate prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

However, "[i]n certain Sixth Amendment contexts, prejudice is presumed." *Id.* at 692. One such circumstance arises "when the defendant's attorney actively represented conflicting interests." *Mickens*, 535 U.S. at 166; *see also Moss v. United States*, 323 F.3d 445, 455-56 (6th Cir. 2003); *Smith v. Hofbauer*, 312 F.3d 809, 814 (6th Cir. 2002). A presumption of prejudice is warranted because "joint representation of conflicting interests is inherently suspect, and because counsel's conflicting obligations to multiple defendants 'effectively sea[l] his lips on crucial matters' and make it difficult to measure the precise harm arising from counsel's errors." *Mickens*, 535 U.S. at 168 (quoting *Holloway v. Arkansas*, 435 U.S. 475, 1173 (1978)).[6] Where, as here, there was

---

[6]Under *Holloway*, reversal is automatic when defense counsel represents codefendants over his timely objection, unless the trial court has determined that there is no conflict. The record is clear that there was no timely objection in this case.

no timely objection to the dual or joint representation, the Supreme Court has held that prejudice is presumed only if the defendant demonstrates that "a conflict of interest actually affected the adequacy of his representation." *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980); *see also Strickland*, 466 U.S. at 692.[7]

**B.      Actual Conflict**

**1.      Adjudicated on the Merits**

Petitioner argued in his motion for post-conviction relief that he was deprived of conflict-free counsel by counsel's joint representation of petitioner and Boykin. The Kentucky Court of Appeals found that although the trial court failed to advise petitioner concerning the possible conflict of interest as required by Kentucky Rule of Criminal Procedure 8.30, "a violation of [Rule] 8.30 which does not result in any prejudice to the defendant does not entitle a defendant to post-conviction relief." *McElrath*, 2004 WL 1858228, at *3. In seeking habeas relief, petitioner argued that the state court decision requiring prejudice was "contrary to" established Supreme Court precedent. Disagreeing, the district court found that the decision did not undertake a review of his federal constitutional claim and, therefore, that AEDPA deference did not apply. Although respondent contests this finding, we are satisfied that the state court rejected the conflict claim on state law grounds, only.

The state court's citation to *Sullivan* and *Mickens* was in support of the proposition that the failure to advise a defendant concerning a potential conflict of interest does not automatically require reversal. The state court's decision, however, rested on the determination under state law that a violation of Rule 8.30 that does not result in any prejudice to the defendant does not require reversal. *Kirkland v. Commonwealth*, 53 S.W.3d 71, 75 (2001). This conclusion is supported by both the fact that the state court separately examined petitioner's ineffective assistance of counsel

---

[7]The Court in *Mickens* clarified that, for purposes of review under AEDPA, its clearly established precedent has not applied the *Sullivan* standard outside the context of a counsel's concurrent representation of more than one defendant. *Mickens*, 535 U.S. at 175-76; *see also Smith*, 312 F.3d at 817-18 (holding that lesser *Sullivan* standard did not apply to AEDPA-governed ineffective assistance of counsel claim arising from conflict of interest other than multiple concurrent representation).

claim under *Strickland*, *see McElrath*, 2004 WL 1858228, at *5, and by the state court's contrasting treatment of Boykin's conflict claim as one for ineffective assistance of counsel under *Sullivan*, *see Boykin*, 2004 WL 1858230, at *3-4.  Accordingly, AEDPA deference does not apply, and our review is *de novo*.

### 2.     Joint Defense

"[T]he *Sullivan* standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect." *Mickens*, 535 U.S. at 172 n.5.  That is, the Court explained: "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Id*.  To find an actual conflict, we require petitioner to "point to specific instances in the record to suggest an actual conflict or impairment of [his] interests" and "demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *United States v. Hall*, 200 F.3d 962, 965-66 (6th Cir. 2000) (internal quotation marks omitted) (quoting *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987)).  A conflict may also prevent an attorney "from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution." *Holloway*, 435 U.S. at 490.

Counsel's choices between alternative courses is evidence of adverse effect only if it is not part of a legitimate strategy, "judged under the deferential review of counsel's performance prescribed in *Strickland*." *McFarland v. Yukins*, 356 F.3d 688, 706 (6th Cir. 2004).  Applying these standards in *McFarland*, a case similar to this one, this court found that counsel's choice to pursue a mutual defense pointing the finger at a third person and foregoing a strong defense in order to avoid inculpating the jointly represented codefendant, was an inexplicable trial strategy and demonstrated that a conflict of interest actually affected the adequacy of the defendant's representation.

In this case, as petitioner contends, the joint representation caused counsel to elect to pursue a joint or mutual defense that was contradicted by the evidence, rather than pursuing the obviously stronger defense of pointing the finger at Boykin and arguing that there was reasonable doubt concerning McElrath's intent to aid the

commission of the offenses. The mutual defense also led counsel to elicit testimony that Fitts told police on the night of the shooting that "Treon done it," and to imply McElrath's connection to the residence where the weapon was found. Defense counsel did not do so as part of an attempt to defend Boykin by laying blame with McElrath; however, counsel's attempt to impeach Fitts's testimony in this way was a choice that was detrimental to McElrath's defense. Although the prosecutor did not maintain that McElrath was one of the shooters, the need to impeach Fitts by arguing that he had accused McElrath was heightened by the decision to put forward a mutual defense that pointed the finger at Fitts.

The failed joint defense asserted that neither Boykin nor McElrath had a role in the shooting and that it was actually Fitts who shot Wilson from inside the house. Not only was the physical evidence of shells, bullets, and bullet holes at the scene inconsistent with this theory, but no plausible theory was offered concerning Fitts's alleged motive or to explain the 911 call. Some of the most damaging evidence to the Fitts-as-shooter theory came in defense counsel's questioning of the ballistics expert. As a divided panel of this court described in deciding that Boykin was entitled to habeas relief under *Sullivan*:

> Trial counsel's decision to pursue a defense theory that Fitts was the shooter was inexplicable given that the pre-trial ballistics report showed that no gunshot residue was found on Fitts's hands. Yet trial counsel called as his only witness the author of the ballistics report who completely refuted the Fitts-as-shooter theory in front of the jury.

*Boykin v. Webb*, 541 F.3d 638, 646-47 (6th Cir. 2008) (*reh. en banc denied* 1/26/09). In pursuing what was described in *Boykin* as a "doomed" mutual defense attempting to deflect responsibility from either McElrath or Boykin onto Fitts, counsel chose to forego petitioner's best defense that would lay responsibility with Boykin and deny having knowledge or intent to aid him. While Boykin had a motive for revenge and was identified by Fitts as a shooter, McElrath was alleged to have been complicit by transporting Boykin and Everett with intent to aid the commission of the offenses.

The circumstantial evidence showed that McElrath was with Boykin earlier in the evening, was seen driving in the area of the shooting shortly before the first 911 call, and was found with Boykin and Everett at his residence in Union City 35 minutes after the shooting. Yet, there was also affirmative testimony from the Hunters establishing that McElrath was not one of the shooters. The weapon was found in Boykin's residence, and the clip was not found in McElrath's car on the night of the shooting. The discrepancy in the strength of the evidence against McElrath and Boykin, respectively, is reflected in comments made by the trial judge after presentation of all the evidence indicating that the only "real case that I can see in this whole thing is [against] Boykin," and that "I have a reasonable doubt [as to the other two] but I'm not the jury." Although the state court and the district court determined that there was constitutionally sufficient evidence to support McElrath's convictions, we conclude that counsel's decision to forgo McElrath's best defense and pursue a doomed mutual defense to the detriment of McElrath (and Boykin) is evidence of disloyalty and demonstrates an actual conflict that affected the adequacy of counsel's representation. Prejudice is therefore presumed, and petitioner is entitled to habeas relief.

Accordingly, we **REVERSE** the denial of McElrath's habeas petition and **REMAND** with instructions to grant the writ and order the state to retry McElrath within 180 days or release him.[8]

---

[8]We do not reach the remaining claims of ineffective assistance of counsel with respect to trial counsel's actions and advice concerning the alleged five-year plea offer. We cannot say, however, that the magistrate judge's factual finding that there was a five-year plea offer—adopted by the district court—was clearly erroneous. We note, in passing, that counsel's advice regarding the offer focused significantly on the importance of Fitt's testimony to the case against both McElrath and Boykin.