NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0027n.06
No. 19-1095

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LAMONT HARVEY | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| UNITED STATES OF AMERICA | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

FILED
Jan 16, 2020
DEBORAH S. HUNT, Clerk

BEFORE: BATCHELDER, WHITE, and THAPAR, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** On the day his trial was scheduled to begin, Defendant Lamont Harvey pleaded guilty to one count of distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1). His codefendant, Christopher Livingston, also pleaded guilty, and would have been the key witness against Harvey had Harvey proceeded to trial. Harvey later learned of a possible conflict of interest arising from his trial attorney's representation of Livingston thirteen years earlier. Harvey moved to vacate his sentence pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel and that his plea was involuntary. The district court denied the motion but granted a certificate of appealability. Harvey appeals and we **AFFIRM**.

## **BACKGROUND**

In June and July of 2015, agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) conducted a series of controlled buys of crack cocaine from Harvey's co-defendant, Christopher Livingston. Police observed Livingston meet with Harvey before most of the sales. After his arrest, Livingston identified Harvey as his source. ATF agents obtained a warrant and searched Harvey's home on the day of Livingston's arrest but found no drugs or drug paraphernalia. However, Harvey told ATF agents that he had been selling drugs for over a year. Harvey was indicted on four counts of distribution of a controlled substance (cocaine base), in violation of 21 U.S.C. § 841(a)(1), and one count of conspiracy to possess with intent to distribute, in violation of 21 U.S.C. §§ 841, 846. The same indictment charged Livingston with eleven counts of distribution of a controlled substance, one count of conspiracy to possess with intent to distribute, and one count of being a felon in possession of a firearm.

The Government offered Harvey a Rule 11 plea agreement. If Harvey pleaded guilty to Count Six (distribution of controlled substances) and admitted to selling a total of 84.74 grams of cocaine base over three days in July 2015, the Government would dismiss all remaining charges. The proposed plea agreement anticipated a Guidelines range of 151 to 188 months, as compared to the possibility of ten years to life if Harvey were convicted at trial. At that time, Harvey was represented by Marlon Evans. At a pretrial conference on May 16, 2016, Harvey confirmed that he had reviewed the plea agreement, understood the possibility of a longer sentence if he were convicted at trial, and declined the plea offer.

The district court scheduled trial for June 27, 2016. However, before trial began, Harvey informed the district court that he wished to forego trial and accept the plea offer. The court confirmed that Harvey understood the rights he would give up by pleading guilty, reviewed the

applicable Guidelines range as calculated in the plea agreement, and determined that Harvey was competent. When asked about his satisfaction with Evans's representation of him, Harvey answered that he was satisfied and had no complaints. However, when the court asked Harvey if it was fair to assume that he was satisfied with having Evans represent him that day, the following exchange occurred:

> Harvey: I was trying to see . . . can I get a different attorney to represent me, but I heard that you said I couldn't get a different attorney to represent me.
>
> The court: On the morning of trial—we went all through this a few weeks ago, you know.[1] And on the morning of trial, you know we're ready to go here.
>
> Harvey: Right.
>
> The court: Are you satisfied with Mr. Evans' representation of you?
>
> Harvey: Yes.
>
> The court: Are you satisfied to have him represent you here today?
>
> Harvey: Yes.

(R. 45, PID 269-70.) The court went on to find that Harvey's plea was given freely and voluntarily. The court accepted the guilty plea to Count Six (distribution) and set the matter for sentencing.

On September 15, 2016, Evans filed a motion to withdraw as counsel, citing a "complete breakdown in the attorney-client relationship." (R. 39, PID 239.) Evans stated that he had been unable to review Harvey's PSR with him to determine whether he had any objections to it prior to sentencing. At a status conference on September 26—which Harvey did not attend—Evans stated that he had lost communication with Harvey about a month earlier, and recently learned that Harvey had hired a new attorney. The district court issued an order for substitution of counsel that day, at which time Leon Weiss became the attorney of record.

---

[1] It appears the district court was referring to Harvey's statements during the final pretrial conference, where Harvey confirmed that he was fully aware of his options and had discussed the plea offer with Evans.

On October 18, 2016, Harvey filed a motion to withdraw his guilty plea. In the motion and brief in support, Harvey asserted that other than during the plea colloquy, he had maintained his innocence to both Evans and Weiss. He described the circumstances leading up to his decision to plead guilty, including the pressure and shock he felt following Evans's advice to plead guilty. According to Harvey, Evans contacted him the day before trial and asked for additional payment to cover representation during trial. Harvey's family made the payment, which reinforced Harvey's understanding that they would move forward with a trial. Harvey arrived on the day of trial ready to proceed as planned, but Evans told him that morning that he would not be able to "beat the case," and advised him that it would be in his best interests to plead guilty. (R. 43, PID 249-50.) Harvey did not believe Evans would advocate for him at trial and "felt totally abandoned" by him. (*Id.* at PID 250.) He felt very distraught and "extremely pressured." (*Id.*)

The district court held a hearing on the motion to withdraw on January 9, 2017. The court reviewed the record from the plea hearing in detail and considered the factors identified in *United States v. Bashara*, 27 F.3d 1174 (6th Cir. 1994).[2] The court concluded that none of the factors favored allowing Harvey to withdraw his plea and denied the motion.

With an offense level of 21 and a criminal history category of VI, Harvey's Guideline range was 151–188 months of imprisonment. On January 27, 2017, the district court sentenced Harvey to 156 months' imprisonment, followed by three years of supervised release.

In April 2017, Harvey filed a pro se motion to vacate his sentence under § 2255, raising several Fifth and Fourteenth Amendment arguments. While that motion was pending, Harvey's family contacted another attorney, Wade Fink, to ask about representing Harvey on the motion.

---

[2] Specifically, the court considered the amount of time elapsed between the plea and the motion to withdraw (four months), the presence or absence of a valid reason for a failure to withdraw earlier, whether Harvey maintained his innocence, the circumstances surrounding the entry of Harvey's guilty plea, Harvey's nature and background, and the potential for prejudice.

While conducting a factual investigation, Fink discovered that Evans had represented Livingston in a criminal matter from 2002 to 2003. In that case, Livingston pleaded guilty to possession of cocaine with intent to distribute and being a felon in possession of a firearm. Based on that information, Harvey withdrew his pro se motion and, with leave of the court, Fink filed a supplemental § 2255 motion.

In the supplemental motion, Harvey argued that Evans's conflict of interest rendered him unable to give honest advice about Harvey's plea offer because Evans could not have effectively cross-examined Livingston—the key witness against Harvey. Harvey urged the court to apply the standards articulated in *Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980), where the Court held that a petitioner claiming ineffective assistance of counsel based on his attorney's concurrent representation need only show "that a conflict of interest actually affected the adequacy of . . . representation." Harvey also argued that he did not know of Evans's conflict and its implications for trial at the time he entered his guilty plea, and therefore his plea could not have been knowing and intelligent.

Harvey asserted that he was aware going into trial that Livingston would testify against him and Harvey wanted to cross-examine him. However, he was not aware at that time that Evans had previously represented Livingston or of the implications that would have for Evans's ability to cross-examine Livingston. In light of this information, Harvey believed that Evans encouraged him to plead guilty not because Livingston would testify against him, but because Evans knew that he would be unable to effectively cross-examine Livingston due to his prior representation of him.

At the evidentiary hearing on Harvey's § 2255 motion, Evans testified that he did not know before the trial date that Livingston would testify, and that one of Livingston's relatives came into

his office "more than once" and represented that Livingston would not cooperate as a witness.[3] (R. 78, PID 806.) Evans testified that although he only learned that Livingston would testify when Livingston showed up for trial, his advice to Harvey that morning was mainly based not on the prospect of Livingston's testimony, but on the audio/video recording of Harvey stating that he sold drugs. Evans testified that he told Harvey "numerous times that the audio/video was going to hurt [his] possibility of success," and that on the morning of trial, he "told [Harvey] he could do what he want [sic] to do, but I informed him that Mr. Livingston was in the bullpen." (*Id.* at PID 808.) Finally, Evans testified that he was not aware of his prior representation of Livingston until "Mr. Harvey told me about Mr. Livingston" and that he did not remember or recognize Livingston.[4] (*Id.* at PID 802, 810.) Evans testified that he did not recall the particulars of the representation, but his representation of Livingston was very short; he did not file any pretrial motions in Livingston's case; and he had not had contact with Livingston since. Evans stated that "Mr. Harvey never told me that he had a problem with me representing Mr. Livingston in the past, never informed me that he felt this was a conflict that would have caused me to compromise my ability to cross-examine Mr. Livingston if he were to go to trial." (*Id.* at PID 806.) Harvey did not testify.

The district court denied Harvey's motion. The court found that even applying *Sullivan*, Harvey's claim failed because he did not show that Evans actively represented conflicting interests:

> Based on Evans' testimony, the Court concludes that Harvey was aware that Evans had previously represented Livingston. But Harvey may not have been aware of the legal significance of this prior representation – he may not have realized that this prior representation created the potential for a conflict, and Harvey certainly

---

[3] The Government issued a subpoena to Livingston on June 17, 2016. The Government then filed an application to compel Livingston to testify on June 23, 2016—four days before the scheduled trial. The Government stated in that application that although Livingston had been subpoenaed, Livingston "ha[d] refused, or [was] likely to refuse" to testify. (R. 30, PID 162.)

[4] It is not clear from Evans's testimony when Harvey told him about Livingston. No one asked him that question during the evidentiary hearing.

did not waive any objection to such conflict. *See United States v. Robinson*, 290 F. App'x 769, 773 (6th Cir. 2008) (defendant's waiver of right to conflict-free counsel must "not only be voluntary but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege").

Nonetheless, the Court concludes that there was no actual conflict that affected Harvey's Sixth Amendment rights. Harvey has not identified any information that Evans might have had that would have prevented him from effectively cross-examining Livingston. He simply asserts that, because Evans represented Livingston on a similar charge over a decade before, Evans must have learned something confidential. This is not sufficient. *See Goward v. United States*, 569 F. App'x 408, 413 (6th Cir. 2014) ("Because Goward has not identified any confidential information his counsel learned from Joseph that hampered cross-examination . . . Goward has not shown an actual conflict that influenced counsel's performance."); *see also McElrath*, 595 F.3d at 631 ("To find an actual conflict, we require petitioner to 'point to specific instances in the record to suggest an actual conflict or impairment of his interests' and 'demonstrate that the attorney made a choice between possible alternative courses of action . . . .'") (brackets omitted). Further, Evans testified that he did not remember anything about his representation of Livingston. While Harvey's counsel examined Evans at the hearing, he asked no questions about whether Evans had acquired any confidential information pertaining to Livingston and whether he had been concerned about exploiting it in his representation of Harvey. Evans testified that his advice to Harvey regarding the guilty plea was based upon Livingston's willingness to testify and Harvey's recorded statement.

Thus, Harvey has not shown the existence of an actual conflict under *Sullivan*. Nor has he shown that, as required under *Strickland*, any conflict of interest contributed to deficiencies in Evans' performance, such that there is a reasonable probability that, but for these deficiencies, Harvey would not have entered his guilty plea. As such, the Court does not find that Harvey's Sixth Amendment right to the effective assistance of counsel was violated.

(R. 75, PID 762-64.) As to Harvey's argument that his guilty plea was not knowing or intelligent, the district court found that the claim failed because it was "simply another way of framing" Harvey's ineffective assistance of counsel claim. (*Id.* at 764.)

### STANDARD OF REVIEW

We review de novo the district court's decision denying a § 2255 motion, but review factual findings for clear error. *Logan v. United States*, 910 F.3d 864, 868 (6th Cir. 2018).

## **DISCUSSION**

**I.      Ineffective Assistance of Counsel[5]**

A defendant claiming ineffective assistance of counsel must ordinarily show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  However, where the defendant claims that counsel has a conflict of interest based on concurrent representation, prejudice is presumed *if* "the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected the lawyer's performance.'"  *Id.* at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).

As the district court noted, the Supreme Court left open the question whether the *Sullivan* presumption applies to claims of ineffective counsel based on conflicts arising from successive representation.  *See Mickens v. Taylor*, 535 U.S. 162, 176 (2002).  Post-*Mickens*, we have declined to extend the presumption to cases involving successive representation.  *Jalowiec v. Bradshaw*, 657 F.3d 293, 315 (6th Cir. 2011).

Harvey urges us to apply the *Sullivan* presumption; the government argues for the familiar *Strickland* standard.  However, we need not address the appropriate standard because, as the district court recognized, Harvey has not demonstrated that an actual conflict adversely affected Evans's representation.  Accordingly, there is no presumption of prejudice even applying *Sullivan*.

Harvey argues that we should presume that Evans learned confidential information about Livingston that affected his ability to effectively cross-examine Livingston, which caused Evans

---

[5] We reject the government's threshold argument that Harvey waived his conflict-of-interest claim.  As the district court found, there is no indication that Harvey recognized the legal implications of Evans's prior representation.

to pressure Harvey into forgoing trial and pleading guilty. Such a presumption would conflict with established circuit precedent, which requires petitioners claiming an actual conflict to "'point to specific instances in the record to suggest an actual conflict or impairment of [their] interests' and 'demonstrate that the attorney made a choice between possible alternative courses of action.'" *McElrath v. Simpson*, 595 F.3d 624, 631 (6th Cir. 2010) (quoting *United States v. Hall*, 200 F.3d 962, 965-66 (6th Cir. 2000)). *See also Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987) (appellants claiming ineffective assistance based on an actual conflict must "point to specific instances in the record" to "make a factual showing of inconsistent interests") (internal quotations omitted). Such a showing may be made by identifying confidential information counsel learned from an adverse witness that would hamper cross-examination. *Goward v. United States*, 569 F. App'x 408, 413 (6th Cir. 2014). Where, as here, a defendant argues that an actual conflict affected his guilty plea, the required showing may be made if the defendant demonstrates that his counsel was in fact prevented from engaging in plea negotiations or pressured him to plead because of obligations to another client. *See Thomas*, 818 F.2d at 481-82 (finding that an actual conflict adversely affected the voluntary nature of the defendant's guilty plea after the attorney admitted that his joint representation of co-defendants affected his ability to negotiate on behalf of the defendant).[6]

---

[6] The cases Harvey relies on out of the Fifth and Seventh Circuits do not support a different result. In *Perillo v. Johnson*, the petitioner argued that her attorney had an actual conflict of interest after he cross-examined a witness whom he had previously represented in a criminal trial. 205 F.3d 775 (5th Cir. 2000). The Fifth Circuit assumed that the attorney's professional duties would have required him to learn at least some confidential information about the client during his "lengthy professional and personal relationship" with him. *Id.* at 799. But the *Perillo* court went on to note that "in keeping with the requirement for an actual, as opposed to a mere hypothetical or possible conflict . . . something more must be shown to demonstrate that the inherent potential for conflict . . . moved into the realm of an actual conflict." *Id.* at 802. The court found that "something more" was demonstrated in part by the fact that the attorney not only represented the government's witness previously, but did so on charges arising out of the same aggravated robbery and murder for which the petitioner was charged. *Id.* Similarly, in *Hall v. United States*, the Seventh Circuit applied *Sullivan* in a case of successive representation and found that the petitioner had shown an actual conflict because, when representing another defendant in the weeks before the petitioner's plea hearing, his

As in *Goward*, Harvey has not identified anything Evans learned from Livingston that would have hampered Evans's ability to effectively cross-examine him. Harvey points out that Evans represented Livingston on a charge under § 841(a)(1)—the same statute under which Harvey was charged—in Detroit, and argues that Evans must have learned information from Livingston that would compromise his ability to cross-examine him. Harvey asserts, for instance, that Evans likely learned information about drug distribution rings in Detroit and Livingston's involvement in them. However, the mere possibility that Evans learned that information does not constitute a factual showing of inconsistent interests, particularly in light of Evans's testimony that he did not remember Livingston.

Nor has Harvey shown that Evans's prior representation of Livingston actually compromised his ability to negotiate on Harvey's behalf or caused Evans to pressure Harvey into pleading guilty. As Harvey points out, certain facts in the record are consistent with the existence of an actual conflict, including that Evans required additional payment from Harvey the day before trial and advised him to plead guilty only when he learned that Livingston would testify. However, those facts are also consistent with Evans's assertion that he was concerned about Harvey's chances of success after learning that Livingston would testify against him. Without more, they do not show that the district court clearly erred in finding that an actual conflict that affected Evans's representation did not exist.

Harvey seems to acknowledge that he has not identified anything specific in the record to establish an actual conflict, but argues that the "substantial relationship" test used by this court to determine whether a conflict disqualifies an attorney from representing a client in a civil case

---

attorney learned "confidential information pertaining directly to [petitioner's] case." 371 F.3d 969, 973 (7th Cir. 2004).

requires the court to presume that Evans learned confidential information from Livingston. (Appellant's Br.at 37-38.)  Harvey cites *Bowers v. Opthalmology Group*, where we granted a plaintiff's motion to disqualify her opponent's counsel on appeal after finding that "there [was] a substantial risk that confidential information as would normally or typically have been obtained in [counsel's] prior representation of [the plaintiff] would materially advance [the defendant's] position in the present case." 733 F.3d 647, 653 (6th Cir. 2013). *See also General Elec. Co. v. Valeron Corp.*, 608 F.2d 265, 267-68 (6th Cir. 1979) (affirming disqualification of defendant's attorney after finding a substantial relationship between the attorney's work for defendant and the same attorney's prior work for plaintiff).  According to Harvey, *Bowers* and *General Electric* demonstrate that the district court erred by rejecting the argument that Evans is presumed to have learned confidential information from Livingston.  These cases are inapposite.  Under *Sullivan*, it is not enough for Harvey to show that Evans learned some unspecified confidential information from Livingston.  Harvey must also show that the information created an actual conflict of interest that affected Evans's representation, 446 U.S. at 350, which he has not done.  Moreover, Harvey has not shown or argued that his case is substantially related to Livingston's earlier case, as was shown in *Bowers* and *General Electric*.

Harvey also argues that he should not be required to point to specific instances in the record to establish a conflict because he did not have the benefit of a trial and thus "does not have the ability of pulling from a record of cross-examination." (Appellant's Br. at 46.)  It is true that by cross-examining Livingston, Evans may have shed light on whether there was an actual conflict and, if so, whether that conflict adversely affected Evans's representation of Harvey.  But nothing in our precedent lessens a defendant's burden in the absence of a record of cross-examination.  To

the contrary, the law requires Harvey to point to "specific instances" in the record that demonstrate an actual conflict—whether or not he went to trial. *See, e.g.*, *Thomas*, 818 F.2d at 481.

As to whether the alleged conflict adversely affected Evans's representation, Harvey argues that Evans's request for money one day before trial, Evans's advice to Harvey the morning before trial, and Harvey's reluctance to plead guilty show that Evans's conflict of interest caused him to encourage Harvey to plead guilty. Although the record shows that Harvey was clearly upset and—at least initially—reluctant to plead guilty on the day of his plea hearing, it does not show that an actual conflict affected the voluntariness of his plea or otherwise affected Evans's representation of him. Accordingly, the district court did not clearly err in finding that Harvey failed to show that an actual conflict affected Evans's performance.

It is true that in limited circumstances, we will consider an attorney's choices themselves to be evidence of a conflict's adverse effect on performance. *See McFarland v. Yukins*, 356 F.3d 688, 707 (6th Cir. 2004). But that is true only "where counsel's choices worked to the defendant's detriment but to the benefit of another client, and there was no other explanation for counsel's choices." *Id.* Harvey's plea did not benefit Livingston, who had already pleaded guilty under the representation of another attorney. Moreover, there is an obvious alternative explanation for Evans's advice to Harvey: Evans was concerned, based on the weight of the evidence that would be presented at trial, that Harvey would be convicted and would face the possibility of a life sentence. Accordingly, there is no reason to consider Evans's advice to Harvey to be evidence of conflicted advice.

Because Harvey has not shown that an actual conflict existed or that the alleged conflict adversely affected Evans's representation of him, his claim fails under *Sullivan*. Since Harvey has not made the requisite showing of deficiency, his claim also fails under *Strickland*.[7]

## II.     Involuntary Plea

Harvey also argues that his lack of understanding with respect to the alleged conflict's effect on Evans rendered his guilty plea unknowing, unintelligent, and involuntary. He further argues that this argument is not, as the district court concluded, merely a reiteration of his ineffective assistance claim, but instead presents a distinct issue and requires independent analysis.

Harvey's involuntary plea argument fails. Harvey does not present a framework separate from *Sullivan* and *Strickland* for analyzing a claim based on the right to conflict-free counsel. Moreover, without demonstrating that an actual conflict of interest existed, Harvey cannot show that a conflict affected the voluntariness of his plea.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order denying Defendant's § 2255 motion.

---

[7] It should be noted that although *Sullivan* is easier to satisfy, the two tests require different showings. *Sullivan* requires an actual conflict that adversely affected the representation while *Strickland* (in the plea context) requires a deficiency that made it reasonably more likely that the defendant would have insisted on a trial but for the deficiency. *See Sullivan*, 446 U.S. at 350; *Strickland*, 466 U.S. at 688, 694; *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017). But just as Harvey fails to make a showing under *Sullivan*, so too he cannot prevail under *Strickland*. He has not shown that Evans was deficient and that he would not have pleaded guilty had he known of the conflict. The district court found that Harvey already knew of the conflict. The district court also found that Evans advised Harvey to plead guilty because of Livingston's testimony and Harvey's admission that he sold drugs—not because of any conflict. So even considering *Strickland* separately from *Sullivan*, Harvey does not prevail.